## A02A0610. PABIAN OUTDOOR-AIKEN, INC. v. DOCKERY.
(560 SE2d 280)

PHIPPS, Judge.

Pauline Dockery sued Pabian Outdoor-Aiken, Inc. for declaratory judgment and ejectment. Dockery claims a lease agreement between her as lessor and Pabian as lessee is unenforceable, because a clause which gives Pabian the unilateral right of termination removes the required element of mutuality from the contract. Dockery also asserts that the payments due her under the lease are unconscionably low and that she would not have agreed to the lease but for Pabian's fraud and misrepresentation. Among other things, Pabian argues that because it incurred substantial expenses in exercising its rights under the lease, the doctrine of promissory estoppel bars Dockery from denying the existence of a binding agreement. The trial court awarded summary judgment to Dockery, ruling that the lease is unenforceable for lack of mutuality and that any reliance by Pabian on a legally unenforceable agreement would not be reasonable. Finding material issues of fact on the question of whether Pabian's reliance was reasonable, we reverse.

Dockery owns a motor lodge and surrounding acreage. During the summer of 1997, she was asked to rent a portion of the property to Pabian for the installation of billboard advertising signs. In August 1997, Dockery leased a portion of the premises to Pabian for construction of two outdoor advertising structures. The lease is for a term of ten years, renewable at Pabian's option for an additional five years, and requires Pabian to pay Dockery $50 per structure per month for a total of $1,200 per year. The lease gives Pabian a right of termination upon 30 days notice if "in [Pabian's] opinion the location becomes economically or otherwise undesirable." If such conditions exist temporarily, Pabian may at its option reduce the rental payment to $5.

> It is axiomatic in the law of contracts that there must be a consideration moving the parties thereto. . . . Among the considerations recognized by law as sufficient to support a contract is that of mutual promises, or, as it is sometimes termed, a promise for a promise. . . . A promise, however, is not a good consideration for a promise unless there is an absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement. [Cits.] And in case[s] of mutual promises, where the promise of one party is relied on as a consideration for the other, the promises must be concurrent and obligatory upon each at the same time, in order to render either binding. [Cits.][1]

---

[1] *Morrow v. Southern Express Co.*, 101 Ga. 810, 811-812 (28 SE 998) (1897).

In *Morrow v. Southern Express Co.*,[2] a railroad agreed to transport dairy products for a shipper at a given rate, but the shipper did not undertake or bind himself to make any shipments. The Supreme Court found the agreement unenforceable for lack of mutuality. In line with *Morrow*, the Court in *Nat. Surety Co. v. City of Atlanta*[3] held that a contract for the continuing purchase of goods which gave the purchaser the right at any time to suspend deliveries was not binding.

In *Milledgeville Water Co. v. Edwards*,[4] however, the Court held that a contract in which a water company agreed to sell water to a consumer at a reduced rate, the consumer having agreed on his part to lay his own pipe and fixtures and to allow the company to tap his pipe for the purpose of supplying other customers with water, was not void for lack of mutuality, even though the consumer was under no obligation to buy the water for any given length of time. The Court arrived at this conclusion because the consideration for the agreement consisted of more than mutual promises, in that the customer made valuable infrastructure improvements benefitting the water company. Similarly, *Tift v. McCaskill*,[5] relied on by Pabian, held that a lease contract did not lack mutuality because of a termination for convenience clause benefitting the lessee, because the lease was executed to carry out an earlier contract supported by other monetary consideration provided by the lessee.[6]

Bargained-for consideration for the agreement in this case consisted of Pabian's promise to pay Dockery a monthly sum for the period of the lease and Dockery's promise to allow Pabian to install and maintain billboards on her property for the same period. Under the cases previously cited, the termination provision deprives the agreement of mutuality only to the extent that Pabian's consideration was its illusory promise to remain in the lease and pay rent.

Under Georgia law, promissory estoppel is a doctrine wherein consideration is supplied by the reliance of the promisee on the promise of another.[7]

Under the Georgia action for promissory estoppel, the essential elements are that: (1) the defendant made a certain

---

[2] Id.

[3] 151 Ga. 123 (106 SE 179) (1921).

[4] 121 Ga. 555 (49 SE 621) (1904).

[5] 171 Ga. 289 (155 SE 192) (1930).

[6] See also *Satterfield v. Satterfield*, 236 Ga. 155, 156 (3) (223 SE2d 136) (1976) (although agreement would have lacked mutuality because of a provision allowing one of the parties to terminate it at any time, agreement became enforceable after the beneficiary of the termination provision completed her performance of the agreement without terminating it).

[7] *Folks, Inc. v. Dobbs*, 181 Ga. App. 311, 314 (2) (352 SE2d 212) (1986).

promise or promises; (2) the defendant should have reasonably expected the plaintiff to rely on such promise or promises; (3) plaintiff did, in fact, rely on such promise or promises to his detriment; and (4) an injustice can be avoided only by the enforcement of the promise, because the plaintiff surrendered, forgoes, or rendered a valuable right. [Cits.][8]

The doctrine of promissory estoppel "basically substitutes action or forbearance (i.e., reliance) by the promisee for the consideration which would otherwise be lacking."[9] But "[p]romissory estoppel cannot be applied unless the promisee reasonably relied on the promise. [Cit.]"[10]

Pabian's claim is that Dockery is estopped from challenging the enforceability of the leasehold agreement because it spent considerable time and money in acquiring governmental approval for the signs and incurred in excess of $10,000 in expenses in erecting the signs. In ruling that any reliance by Pabian on a legally unenforceable agreement would be unreasonable as a matter of law, the trial court relied on *Fidelity &c. Co. of Maryland*.[11] The court's reliance on *Fidelity* was misplaced.

In *Fidelity*, a bonding company gave assurances to a general contractor that a subcontractor was bondable. The general contractor relied on these assurances by instructing the subcontractor to begin work before the bonds were issued, and the subcontractor later refused to execute the bonds provided by the bonding company. We held that "[e]ven if the general contractor relied upon the assurance by the bonding company that the proposed subcontractor was bondable by it, the bonding company did not promise to be bound even if its customer, the contemplated principal, refused to execute the bond."[12] We further observed that even if such a promise had been made, there could have been no reasonable reliance on it because its enforceability was "fraught with legal impediments."[13] This observation should not, however, be interpreted to mean that failure of the parties to enter into a binding agreement, in and of itself, precludes a claim of promissory estoppel. That notion is inconsistent with the purpose of the doctrine (to enforce promises where there is no bind-

---

[8] *Simpson Consulting v. Barclays Bank*, 227 Ga. App. 648, 656-657 (5) (490 SE2d 184) (1997), citing OCGA § 13-3-44 (a) and cases.

[9] *Fidelity &c. Co. of Maryland v. West Point Constr. Co.*, 178 Ga. App. 578, 579 (1) (344 SE2d 268) (1986).

[10] Id. at 580 (1).

[11] Id.

[12] (Footnote omitted.) Id.

[13] Id.

ing agreement), and it was soundly rejected in *DPLM, Ltd. v. J. H. Harvey Co.*,[14] wherein it was also recognized that " '[p]romissory estoppel claims are extremely fact specific and are not susceptible to application of general rules.' [Cit.]"[15]

Whether Pabian reasonably relied on leasehold promises by Dockery is a question for the jury under the totality of the facts. Therefore, the trial court erred in granting Dockery's motion for summary judgment.

*Judgment reversed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JANUARY 31, 2002 —
RECONSIDERATION DENIED FEBRUARY 14, 2002.

*Lambert & Roffman, M. Joseph Reitman, Jr.,* for appellant.
*Brown & Rountree, George H. Rountree,* for appellee.

---

[14] 241 Ga. App. 219, 220 (1) (526 SE2d 409) (1999).
[15] Id.