## A00A1310. MOONEY v. MOONEY.
### (538 SE2d 864)

BLACKBURN, Presiding Judge.

In the second appearance of this domestic relations case before this Court, Patsy Ann Mooney appeals the trial court's denial of her motion for summary judgment and the grant of summary judgment to Jackie "Jack" Mooney on her claim for child support for their grandchild. *Mooney v. Mooney*.[1] For the reasons discussed below, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Brown v. Ohio Cas. Ins. Co.*[2]

Viewed in this light, the record shows that Steve Mooney, the son of the parties herein, had a daughter, A. M. M., and that shortly after her birth, the child lived with Patsy and Jack Mooney intermittently. When A. M. M. was three years old, she began living with Patsy and Jack Mooney.

In 1989, Patsy and Jack Mooney separated, although they continued to occupy the same residence. In 1990, the parents of A. M. M. agreed to give physical custody of A. M. M. to Patsy and Jack Mooney, but they retained their parental rights and responsibilities. However, after obtaining custody of A. M. M., the Mooneys received no financial support for her from her parents.[3] In 1992, Patsy and Jack Mooney were divorced in Georgia. The divorce decree incorporated a settlement agreement, but neither the decree of divorce nor the settlement agreement addressed custody of or support for A. M. M.

Six years after the divorce, Patsy Mooney filed the present action to domesticate the North Carolina order awarding custody of A. M. M. and for child support. Jack Mooney answered the complaint, denying he was obligated to pay child support and asserting that the complaint failed to state a claim. The trial court domesticated the custody award, reserving for determination whether Jack Mooney

---

[1] In *Mooney v. Mooney*, 235 Ga. App. 117 (508 SE2d 766) (1998), we reversed the trial court's ruling granting Jack Mooney's motion to dismiss for failure to state a claim.

[2] *Brown v. Ohio Cas. Ins. Co.*, 239 Ga. App. 251 (519 SE2d 726) (1999).

[3] Patsy Mooney applied for aid from North Carolina, but discontinued that aid when she learned that North Carolina would look to A. M. M.'s parents for reimbursement.

was obligated to provide child support to Patsy Mooney. Subsequently, the trial court granted Jack Mooney's motion to dismiss for failure to state a claim, finding that under the circumstances, he could not be required to pay child support. Additionally, the trial court determined that the complaint failed to state a claim for promissory estoppel.

Patsy Mooney appealed only the dismissal of the promissory estoppel claim. In *Mooney v. Mooney*, supra, we reversed the trial court, holding that Patsy Mooney's complaint stated a cause of action for promissory estoppel and enforcement of an oral contract between the parties. Subsequently, the trial court ruled on Jack Mooney's motion for summary judgment and determined that the evidence did not support a cause of action for either promissory estoppel or enforcement of an oral contract. Patsy Mooney appeals from that ruling.

The trial court determined that the evidence did not support Patsy Mooney's claim for child support under a theory of promissory estoppel or oral contract. Both theories require evidence of an agreement or promise, which evidence the trial court held was lacking here. OCGA § 13-3-44 (a) — *Simpson Consulting v. Barclays Bank PLC*[4] (a promise is an essential element of a claim for promissory estoppel); OCGA § 13-1-1 — *Sanders v. Commercial Cas. Ins. Co.*[5] (contract requires an agreement between the parties).

Patsy Mooney asserted in her complaint and by affidavit that she and Jack Mooney had agreed, prior to obtaining custody of A. M. M., that both would provide financial support for her as a condition precedent to accepting custody of her. She further asserted that Jack Mooney had "reaffirmed his agreement" after the Mooneys separated and again after their divorce.

However, the record shows that no such promise or agreement was made. In her deposition, Patsy Mooney testified that she traveled to North Carolina and obtained custody of A. M. M. without discussing it with Jack. Patsy further testified that she and Jack never discussed the financial aspect of raising A. M. M. As Patsy's deposition testimony contradicts her affidavit, her self-contradictory testimony must be construed against her. *Prophecy Corp. v. Charles Rossignol, Inc.*[6]

> On motion for summary judgment a party's self-conflicting testimony is to be construed against her unless a

[4] *Simpson Consulting v. Barclays Bank PLC*, 227 Ga. App. 648, 656 (5) (490 SE2d 184) (1997).

[5] *Sanders v. Commercial Cas. Ins. Co.*, 226 Ga. App. 119, 120 (1) (485 SE2d 264) (1997).

[6] *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (343 SE2d 680) (1986).

reasonable explanation for the contradiction is offered. *Gentile v. Miller, Stevenson &c.*, 257 Ga. 583 (361 SE2d 383) (1987); *Prophecy Corp. v. Charles Rossignol, Inc.*, [supra at 30]. As [Patsy Mooney] offered no explanation for the contradiction between her affidavit and deposition testimony, the trial court was required to *eliminate* the favorable portions of the contradictory testimony.

(Punctuation omitted; emphasis in original.) *Wright v. JDN Structured Finance.*[7] After eliminating the favorable testimony, there is no evidence that Jack Mooney promised Patsy Mooney that he would provide and continue to provide financial support for A. M. M. Additionally, there is no evidence that Patsy Mooney relied on such a promise when she went to North Carolina to take custody of A. M. M.

In further support of her contention that Jack had agreed to provide financial support for A. M. M., Patsy points to her testimony that, after their divorce, Jack had said he would help her and A. M. M. Patsy Mooney testified that, to help Jack Mooney establish his bar, she stayed in the house and paid all the bills for the year following their divorce. In exchange for this help, Patsy Mooney stated that Jack Mooney promised to help her and A. M. M. with whatever they needed. She further testified that she and Jack never discussed what "help" meant, or any other particulars of his promise.

"A contract cannot be enforced if its terms are incomplete, vague, indefinite or uncertain. In addition, the party asserting the existence of a contract has the burden of proving its existence and its terms. This proof must be clear and convincing." (Citations and punctuation omitted.) *Cumberland Center Assoc. v. Southeast Mgmt. &c. Corp.*[8] The trial court held that a statement that one will help another is too vague and indefinite to meet the formal requisites for a contract between the parties.

Likewise, we find no evidence to support an equitable claim of promissory estoppel.

The principle of promissory estoppel relates to the sufficiency of consideration to enforce a promise; it merely provides that in certain circumstances, the reliance by the promissee or third party upon the promise of another is sufficient consideration . . . to render the executory promise enforceable against the promissor. Ordinarily the key difference between a promise supported by consideration and a

---

[7] *Wright v. JDN Structured Finance*, 239 Ga. App. 685, 686 (1) (522 SE2d 4) (1999).
[8] *Cumberland Center Assoc. v. Southeast Mgmt. &c. Corp.*, 228 Ga. App. 571, 574-575 (1) (492 SE2d 546) (1997).

promise supported by a promissory estoppel is that in the former case the detriment is bargained for in exchange for the promise; in the latter, there is no bargain.

(Citation and punctuation omitted.) *Bank of Dade v. Reeves*.[9]

An essential element of a claim of promissory estoppel is that the defendant made certain promises to the plaintiff. *Simpson Consulting*, supra. And, while the promise need not meet the formal requirements of a contract, it must, nonetheless, have been communicated with sufficient particularity to enforce the commitment. " 'A promise is a manifestation of an intention to act or refrain from acting in a *specified* way, so made as to justify a promisee in understanding that a commitment has been made.' " (Emphasis supplied.) *DPLM, Ltd. v. J. H. Harvey Co.*[10] Thus, this Court has found promissory estoppel enforced a promise to abide by covenant provisions and a promise to monitor timber removal and cleanup operations on certain land. *Canterbury Forest Assn. v. Collins*;[11] *Ambrose v. Sheppard*.[12] See *DPLM, Ltd.*, supra (evidence showing defendant's interest in expanding a particular store and authorization to perform work in the location store would be located supported claim for promissory estoppel); *Kent v. Brown*[13] (promise to pay expert for his testimony coupled with expert's testimony at deposition and at trial supported claim for promissory estoppel).

Estoppel does not apply, however, to vague, indefinite promises.[14] Thus, we have found that a promise to "work something out" regarding future additional construction loans could not be enforced under a claim of promissory estoppel. *Bridges v. Reliance Trust Co.*;[15] see *Reuben v. First Nat. Bank of Atlanta*[16] (alleged promise to make construction loans where no particulars regarding the loans were shown by plaintiff was not enforceable under promissory estoppel). A promise to give one's business to another for an indefinite period was unenforceable, also. *Voyles v. Sasser*.[17]

In the present case, Patsy Mooney testified that Jack Mooney promised that he would help her and A. M. M. However, that promise lacks any particulars. The promised help would come in some un-

---

[9] *Bank of Dade v. Reeves*, 257 Ga. 51, 53 (3) (354 SE2d 131) (1987).

[10] *DPLM, Ltd. v. J. H. Harvey Co.*, 241 Ga. App. 219, 221 (1) (526 SE2d 409) (1999).

[11] *Canterbury Forest Assn. v. Collins*, 243 Ga. App. 425 (532 SE2d 736) (2000).

[12] *Ambrose v. Sheppard*, 241 Ga. App. 835 (528 SE2d 282) (2000).

[13] *Kent v. Brown*, 238 Ga. App. 607 (518 SE2d 737) (1999).

[14] This is not to say promissory estoppel does not apply to promises of future acts; the doctrine can apply to an executory promise. *Simpson Consulting*, supra at 656-657.

[15] *Bridges v. Reliance Trust Co.*, 205 Ga. App. 400 (422 SE2d 277) (1992).

[16] *Reuben v. First Nat. Bank of Atlanta*, 146 Ga. App. 864 (247 SE2d 504) (1978).

[17] *Voyles v. Sasser*, 221 Ga. App. 305 (2) (472 SE2d 80) (1996).

specified way, at some unspecified time, under unspecified conditions. Such a promise is too vague and indefinite to enforce as a promise of child support under a claim of promissory estoppel.

Finally, Patsy Mooney argues that a person who has had joint custody of a child has also made a legally enforceable promise to provide child support in the future, relying on *Wright v. Newman*.[18] This reliance is misplaced. *Wright* held that a legally enforceable obligation to provide child support can be based upon promissory estoppel under the facts therein. Unlike the present case, Wright had promised Newman and her son that he would assume all of the obligations and responsibilities of parenthood. His promise was evidenced by Wright acknowledging paternity by listing himself as the father on the child's birth certificate, even though he knew he was not the father. Thereafter, for over ten years Wright held himself out as the child's father. By acknowledging paternity, Wright accepted the obligations of parenthood, including the support obligation. Furthermore, Wright was estopped from denying the obligation to provide child support because Newman, relying on his promise of support, had not sought out the child's natural father.

Similarly in *Brannon v. Brannon*,[19] a grandfather who had agreed to provide child support as part of a divorce decree actually paid for 18 months and then stopped paying. Under those circumstances, our Supreme Court held that the grandfather was obligated to continue to provide support. The Supreme Court noted, however, that, absent the agreement, the grandfather had no obligation to provide support.

Both *Wright*, supra, and *Brannon*, supra, are factually distinguishable from the present case and provide no support for Patsy Mooney's claim for child support. Here, there is no evidence of an agreement by Jack Mooney to assume parental obligations. While Patsy and Jack Mooney were given joint custody of A. M. M., her natural parents retained their parental rights and responsibilities, including the obligation of support. The trial court correctly concluded that a grandparent's previous voluntary support for a grandchild provides no basis for an obligation to provide child support in the future, absent an agreement to do so.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

---

[18] *Wright v. Newman*, 266 Ga. 519 (467 SE2d 533) (1996).
[19] *Brannon v. Brannon*, 261 Ga. 565 (407 SE2d 748) (1991).

Decided September 6, 2000

*C. Suzette Ellis-Hoyle*, for appellant.
*Charles A. Mullinax*, for appellee.